# EXHIBIT A

# EXHIBIT A

● ORIGINAL ●

FILED

Oct 3 8 33 AM '06

*Shirley B. Parraguirre*
CLERK

1  ALBRIGHT, STODDARD, WARNICK
   & ALBRIGHT
2  G. MARK ALBRIGHT
   Nevada Bar No. 001394
3  801 South Rancho Drive #D4
   Las Vegas, NV 89106
4  Telephone: 702/384-7111

5                           DISTRICT COURT
                       CLARK COUNTY, NEVADA
6
                                              Case No.: A529183
7  NATALIE GORDON, On Behalf of Herself       Dept No.:
   and All Others Similarly Situated,
8                                                        I
                          Plaintiff,
9        -v-

10 HARRAH'S ENTERTAINMENT, INC.,
   CHARLES L. ATWOOD, R. BRAD
11 MARTIN, GARY G. MICHAEL, STEPHEN
   F. BOLLENBACH, RALPH HORN, GARY
12 W. LOVEMAN, BOAKE A. SELLS,
   BARBARA T. ALEXANDER, FRANK J.
13 BIONDI, JR., ROBERT G. MILLER,
   CHRISTOPHER J. WILLIAMS, APOLLO
14 MANAGEMENT L.P., AND TEXAS
   PACIFIC GROUP,
15
                          Defendants.              **JURY TRAIL DEMANDED**
16

17

18                    **CLASS ACTION COMPLAINT**

19       Plaintiff, by her attorneys, submits this Complaint (the "Complaint") against the defendants

20 named herein.

21                    **NATURE OF THE ACTION**

22       This is a shareholder class action brought by plaintiff on behalf of holders of Harrah's

23 Entertainment Group, Inc. ("Harrah's" or the "Company") to enjoin the proposed acquisition of the

24 publicly owned shares of Harrah's common stock by several private equity firms, as detailed herein

25 (the "Proposed Transaction").

RECEIVED
OCT 0 3 2006
COUNTY CLERK

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action because Harrah's conducts business in Nevada and has it principal place of business at One Harrah's Court, Las Vegas, Nevada 89119. This action is not removable.

2.      Venue is proper in this Court because the conduct at issue took place and had effect in this County.

## THE PARTIES

3.      Plaintiff Natalie Gordon is, and was, at times relevant hereto, a shareholder of Harrah's.

4.      Defendant Harrah's is a corporation organized and existing under the laws of the state of Delaware, with its headquarters located at One Harrah's Court, Las Vegas, Nevada 89119. With its $ 9.3 billion acquisition of Caesars Entertainment, Inc., in 2005, Harrah's became the world's largest gaming-entertainment company.  Harrah's owns or manages approximately 39 casinos, casino/hotels, and riverboat casino facilities through a wholly-owned subsidiary, Harrah's Operating Company, Inc., which operate under the Harrah's, Caesars, Showboat, Horseshoe and Rio brand names.  Harrah's common stock is traded on the New York Stock Exchange under the symbol "HET".

5.      Defendant Charles L. Atwood ("Atwood") has served as a director of the Company since July 2005 and Chief Financial Officer since 2001.  He was also a Senior Vice President from April 2001 to February 2006 and Treasurer from October 1996 to November 2003.  Additionally, he was a Vice President of the Company from October 1996 to April 2001. Atwood also serves as a director of Equity Residential, an owner and operator of multi-family properties.

6.      Defendant R. Brad Martin ("Martin") has served as a director of the Company since July 1996.  Martin has also served as Chairman of the Board of Saks Incorporated (formerly Proffitt's, Inc.), a retail department store company, since 1989, and served as its Chief Executive Officer until January 2006.  He is also a director of First Horizon National Corporation, a banking corporation.

2

1    7.    Defendant Gary G. Michael ("Michael") has served as a director of the Company

2 since November 2001. Michael was Chairman of the Board and Chief Executive Officer of

3 Albertsons, Inc., a grocery supermarket company, from February 1991 to April 2001. He is also a

4 director of Questar, Inc., an energy development company; OfficeMax Inc., a business-to-business

5 and retail distributor of office products; IDACORP, Inc., an energy company; and The Clorox

6 Company, a household products manufacturing company. He is a member of the Audit and Finance

7 Committees of the Board.

8    8.    Defendant Stephen F. Bollenbach ("Bollenbach") has served as a director of the

9 Company since 2005. Bollenbach also serves as Co-Chairman of the Board and Chief Executive

10 Officer of Hilton Hotels Corporation, a hotel and hospitality company, since May 2004, and was its

11 Chief Executive Officer and President from February 1996 to May 2004. He was also a Director and

12 Chairman of the Board of Caesars Entertainment, Inc. from December 1998 until the effective date

13 of its merger with the Company. He is a member of the Audit Committee of the Board.

14    9.    Defendant Ralph Horn ("Horn") has served as a director of the Company since July

15 1995. Horn has also served as Chairman of the Board of First Tennessee National Corporation, a

16 banking corporation, from January 1996 until December 2003; a director of Gaylord Entertainment

17 Company, a hospitality and entertainment company; and Mid-America Apartment Communities,

18 Inc., an umbrella partnership real estate investment trust. He is a member of the Human Resources

19 and Nominating/Corporate Governance Committees of the Board.

20    10.    Defendant Gary W. Loveman ("Loveman") has served as a director of the Company

21 since February 2000, Chief Executive Officer since January 2003, and Chairman of the Board since

22 January 2005. He has been the Company's President since April 2001 and was its Chief Operating

23 Officer from May 1998 through December 2002. He was a member of the three-executive Office of

24 the President from May 1999 to April 2001 and was Executive Vice President from May 1998 to

25 May 1999. Loveman is also a director of Coach, Inc., a designer and marketer of high quality

26 handbags and women's and men's accessories.

27    11.    Defendant Boake A. Sells ("Sells") has served as a director of the Company since

28 February 1990. Sells was Chairman of the Board and Chief Executive Officer of Revco D.S., Inc., a

3

1 | retail pharmacy chain, from September 1987 to October 1992 and was President of that company

2 | from April 1988 to June 1992. He is a member of the Human Resources and Nominating/Corporate

3 | Governance Committees of the Board.

4 |       12.     Defendant Barbara T. Alexander ("Alexander") has served as a director of the

5 | Company since February 2002.  Alexander was also a Senior Advisor for UBS Warburg, an

6 | investment banking firm, from October 1999 to January 2004 and a Managing Director of Dillon

7 | Read & Co, Inc., an investment banking firm, and successor companies from January 1992 until

8 | October 1999.  Alexander is also a director of Centex Corporation, a building and related services

9 | company; Burlington Resources, an independent oil and gas company; and Federal Home Loan

10 | Mortgage Corporation, or "Freddie Mac", a stockholder-owned company that supports home

11 | ownership and rental housing.  Alexander is Chairperson of the Audit Committee and is a member of

12 | the Finance Committee.

13 |       13.     Defendant Frank J. Biondi ("Biondi") has served as a director of the Company since

14 | May 2002. Biondi is also a Senior Managing Director of WaterView Advisors LLC, a private equity

15 | fund specializing in media.  He was Chairman and Chief Executive Officer of Universal Studios

16 | from April 1996 through November 1998 and President and Chief Executive Officer of Viacom, Inc.

17 | from July 1987 through January 1996. He is also a director of The Bank of New York Company,

18 | Inc., a financial holding company and provider of banking and financial services; Amgen, Inc., a

19 | biotechnology company; Hasbro, Inc., a developer of children's and family leisure time

20 | entertainment products; Seagate Technology, a manufacturer of memory devices for computing and

21 | consumer electronic devices; and Cablevision Systems Corporation, an entertainment and

22 | telecommunications company.  He is Chairman of the Human Resources and Nominating/Corporate

23 | Governance Committees.

24 |       14.     Defendant Robert G. Miller ("Miller") has served as a director of the Company since

25 | May 1999.  Miller is also the Chairman of the Board of Rite-Aid, Inc., a retail pharmacy chain, a

26 | position he has held since December 1999. He was Chief Executive Officer of that company from

27 | December 1999 to July 2003. He was also Vice Chairman and Chief Operating Officer of The

28 | Kroger Co., a grocery supermarket company, from May 1999 until December 1999; Vice Chairman

<div align="center">4</div>

1   of the Board and Chief Executive Officer of Fred Meyer, Inc. a grocery supermarket company, from

2   July 1998 to May 1999, and Chairman of the Board and Chief Executive Officer of Fred Meyer, Inc.

3   from 1991 to July 1998. He is also a director of Nordstrom, Inc., a fashion specialty retailer, and a

4   director and Chairman of Wild Oats Markets, Inc., a natural and organic foods retailer.  He is a

5   member of the Human Resources and Nominating/Corporate Governance Committees of the Board.

6        15.     Defendant Christopher J. Williams ("Williams") has served as a director of the

7   Company since November 2003.  Williams has also served as Chairman of the Board and Chief

8   Executive Officer of Williams Capital Group, L.P., an investment bank, since 1994, and Chairman

9   of the Board and Chief Executive Officer of Williams Capital Management, LLC, an investment

10  management firm, since 2002.  He is a member of the Audit Committee of the Board.

11       16.     Defendants Atwood, Martin, Michael, Bollenbach, Horn, Loveman, Sells, Alexander,

12  Biondi, Miller, and Williams are referred to herein as the "Individual Defendants."

13       17.     Defendant Apollo Management L.P. ("Apollo Management") is an investment firm

14  with headquarters located at 1301 Avenue of the Americas, Fl. 38, New York NY 10019-6033.

15  Apollo, founded in 1990, is among the most active and successful private investment firms in terms

16  of both number of investment transactions completed and aggregate dollars invested.  Since its

17  inception, Apollo has invested over $16 billion in a wide variety of industries both domestically and

18  internationally.  The firm's most recent private equity fund, Apollo Investment Fund VI, L.P. has

19  capital commitments of $10.1 billion.

20       18.     Texas Pacific Group ("Texas Pacific") is a private investment partnership that was

21  founded in 1992 and currently has more than $30 billion of assets under management. Texas Pacific

22  Group, with its headquarters located at 301 Commerce St., Ste. 3300, Fort Worth, TX 76102, invests

23  in world-class franchises across a range of industries, including technology, industrials,

24  retail/consumer, airlines, media and communications, financial services and healthcare, among

25  others.

26       19.     Defendants Apollo and Texas Pacific are referred to herein as the "Private Equity

27  Defendants."

28

5

## SUBSTANTIVE ALLEGATIONS

20.    On October 2, 2006, Harrah's announced that it had received an offer from the Private Equity Defendants to be taken private in a deal valued at approximately $15.1 billion. Under the terms, shareholders of Harrah's will receive $81 in cash for each share of Harrah's stock owned.

21.    The $81 cash per share offered in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Harrah's common stock is materially in excess of the amount offered for those securities in the Proposed Transaction given the Company's prospects for future growth and earnings.

22.    In fact, on October 2, 2006, *Bloomberg* news service reported that "Harrah's shares are cheap compared with the cash its properties including Caesar's Palace and Harrah's Las Vegas produce" citing analysts such as Steve Ruggiero of CRT Capital Group, LLC.

23.    The Company's bright prospects have been described in recent press releases. For example, on April 27, 2006, the Company said first-quarter revenues rose 93.3 percent to a record $2.4 billion from the $1.2 billion reported in the 2005 first quarter. Property Earnings Before Interest, Taxes, Depreciation and Amortization (Property EBITDA) doubled to a record $690.1 million from Property EBITDA of $343.2 million in the year-earlier period. First-quarter Adjusted Earnings Per Share (EPS) from continuing operations rose to a record $1.02, up 22.9 percent from 83 cents in the 2005 first quarter. Commenting on these record results, Defendant Loveman stated:

> The 2006 first-quarter produced the best operating results in Harrah's history due to continued successful execution of an organic-growth strategy that has enabled us to record same-store sales growth in all but one of the past 34 quarters,
>
> In addition, we achieved our projected $80 million first-year synergy target for the Caesars properties by the end of the first quarter -- three months ahead of schedule -- and expect the first full-year number to exceed $110 million. We project our second year of Caesars ownership will yield $180 million of synergies.

24.    Moreover, Loveman prominently noted that this "extraordinary first-quarter performance was accomplished despite the loss of properties in Hurricanes Katrina and Rita and during a period in which our Total Rewards customer-loyalty program was not yet fully integrated into all Caesars properties". Loveman continued:

> But the tremendous operating momentum we have achieved is not the sole reason we are confident about our future .... we're even more excited about the extraordinary range of growth opportunities that lie before us, both domestically and abroad. In

6

Atlantic City, we anticipate the new luxury retail shopping complex at Caesars will open in phases beginning this June, and we are forging ahead with a $550 million expansion at Harrah's. We plan to announce details about the master plan for our center Boardwalk properties in Atlantic City -- where we have more than 20 acres available for additional development -- this summer.

Pending regulatory approval, we expect a smaller version of the Grand Casino in Biloxi, Mississippi, will also begin serving customers this summer while we plan development of a new and larger facility, which will be the Gulf Coast's best casino-entertainment offering, . . .Racing begins at Harrah's Chester near Philadelphia in September; pending regulatory approvals, we expect to open the casino there in early 2007. We also plan an expansion of the Horseshoe Hammond property in the Chicago area, and have submitted a proposal for a large gaming-entertainment complex in Pittsburgh.

On the international front, we are moving ahead with plans for our previously announced ventures in Spain, Slovenia and the Bahamas and have submitted our final bid for the multi-billion dollar integrated resort in Singapore, . . . We are also pursuing additional opportunities in other areas throughout the world.

Las Vegas offers perhaps the most exciting domestic development opportunity for Harrah's, . . . Not only do we have seven existing facilities here, but we also have more than 100 undeveloped acres around those properties, giving us a much broader footprint in the world's biggest gaming market.

Over the past eight years, we have demonstrated our ability to drive customer visitation to multiple Harrah's properties across the wide range of markets we serve, . . . That ability will serve us well in the future as we execute the stages of our master development plan for Las Vegas, which we will unveil this summer, and bodes well for other high-return projects that will introduce the Harrah's brands to a global audience.

25.    On July 27, 2006, Harrah's reported record second-quarter results, stating that:

- Revenue reached a record $2.4 billion, up 67%;

- Property EBITDA was up 70% to record $673 million; operating margins improve in most regions;

- Adjusted EPS from Continuing Operations of 95 cents, was up 10% to a quarterly record; investments in development, concept planning impact Adjusted EPS;

- The Company realized $118 million in first-year synergies from Caesars Entertainment acquisition; and

- Overall operations remain strong.

26.    Commenting on these record second-quarter results, Defendant Loveman stated: "Our healthy, broad-based growth in the second quarter demonstrates that our overall operations remain strong". Furthermore, Loveman stated: "Our core business -- particularly in Las Vegas and

7

1   Atlantic City -- remains robust, and customer visitation and spending remains healthy across the

2   country."

3        27.   Under the circumstances, however, the Individual Defendants are obligated to explore

4   all alternatives to maximize shareholder value.

5   <center>**CLASS ACTION ALLEGATIONS**</center>

6        28.   Plaintiff brings this action on his own behalf and as a class action on behalf of all

7   holders of Harrah's common stock who are being and will be harmed by defendants' actions

8   described below (the "Class"). Excluded from the Class are defendants herein and any person, firm,

9   trust, corporation, or other entity related to or affiliated with any defendants.

10       29.   This action is properly maintainable as a class action. The Class is so numerous that

11  joinder of all members is impracticable. As of January 31, 2006, the Registrant had 184,092,919

12  shares of Common Stock were issued and outstanding. The actual number of public shareholders of

13  Harrah's will be ascertained through discovery.

14       30.   There are questions of law and fact which are common to the Class and which

15  predominate over questions affecting any individual Class member. The common questions include

16  the following:

17       (a)   whether defendants have breached their fiduciary duties of undivided loyalty,

18  independence or due care with respect to plaintiff and the other members of the Class in connection

19  with the Proposed Transaction;

20       (b)   whether the Individual Defendants are engaging in self-dealing in connection

21  with the Proposed Transaction;

22       (c)   whether the Individual Defendants have breached their fiduciary duty to

23  secure and obtain the best price reasonable under the circumstances for the benefit of plaintiff and

24  the other members of the Class in connection with the Proposed Transaction;

25       (d)   whether the Individual Defendants are unjustly enriching themselves and other

26  insiders or affiliates of Harrah's;

27

28

<center>8</center>

1      (e)    whether defendants have breached any of their other fiduciary duties to

2 plaintiff and the other members of the Class in connection with the Proposed Transaction, including

3 the duties of good faith, diligence, honesty and fair dealing;

4      (f)    whether the defendants, in bad faith and for improper motives, have impeded

5 or erected barriers to discourage other offers for the Company or its assets; and

6      (g)    whether plaintiff and the other members of the Class would suffer irreparable

7 injury were the Proposed Transaction consummated.

8    31.    Plaintiff's claims are typical of the claims of the other members of the Class and

9 plaintiff does not have any interests adverse to the Class.

10    32.    Plaintiff is an adequate representative of the Class, has retained competent counsel

11 experienced in litigation of this nature and will fairly and adequately protect the interests of the

12 Class.

13    33.    The prosecution of separate actions by individual members of the Class would create

14 a risk of inconsistent or varying adjudications with respect to individual members of the Class which

15 would establish incompatible standards of conduct for the party opposing the Class.

16    34.    Plaintiff anticipates that there will be no difficulty in the management of this

17 litigation. A class action is superior to other available methods for the fair and efficient adjudication

18 of this controversy.

19    35.    Defendants have acted on grounds generally applicable to the Class with respect to

20 the matters complained of herein, thereby making appropriate the relief sought herein with respect to

21 the Class as a whole.

22 <div align="center">**FIRST CAUSE OF ACTION**</div>

23 <div align="center">**Claim for Breach of Fiduciary Duties**</div>

24    36.    Plaintiff repeats and realleges each allegation set forth herein.

25    37.    The purpose of the Proposed Transaction is to enable the Private Equuity Defendants

26 to acquire the Company and its valuable assets for themselves at the expense of Harrah's public

27 shareholders.

28

<div align="center">9</div>

38.     The Private Equity Defendants have timed this Proposed Transaction to capture the Company's future potential without paying an adequate or fair price for the Company.

39.     The Individual Defendants are in apposition of control and power over Harrah's public shareholders, and have access to internal financial information about Harrah's, its true value, expected increase in true value and the benefits of 100 percent ownership of Harrah's to which plaintiff and the class members are not privy. Defendants are using their positions of power and control to benefit the Private Equity Defendants in this Proposed Transaction to the detriment of Harrah's public stockholders.

40.     in light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

      (a)     undertake an appropriate evaluation of Harrah's worth as a merger/acquisition candidate;

      (b)     take all appropriate steps to enhance Harrah's value and attractiveness as a merger/acquisition candidate;

      (c)     take all appropriate steps to effectively expose Harrah's to the marketplace in an effort to create an active auction for Harrah's, including but not limited to engaging in serious negotiations with the Private Equity defendants;

      (d)     act independently so that the interests of Harrah's public stockholders will be protected; and

      (e)     adequately ensure that no conflicts of interest exist between defendants own interests and their fiduciary obligation to maximize stockholder value or, if such conflicts exist, to ensure that all conflicts be resolved in the best interests of Harrah's public stockholders.

41.     Unless enjoined by this Court, the defendants will continue to breach their fiduciary duties owed to plaintiff and the Class, and may consummate the Proposed Transaction which will exclude the Class from its fair share of Harrah's valuable assets and businesses, and/or benefit them in the unfair manner complained of herein, all to the irreparable harm of the Class, as aforesaid.

42.   Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

43.   The Private Equity Defendants have acted and are acting with knowledge or with reckless disregard that the other defendants are in breach of their fiduciary duties to Harrah's public shareholders and have participated in such breaches of fiduciary duties by the directors of Harrah's and thus are liable as aiders and abettors.

44.   As a result of the defendants' unlawful actions, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive their fair portion of the value of Harrah's assets and business and will be prevented from obtaining the real value of their equity ownership of the Company. Unless the Proposed Transaction is enjoined by the Court, defendants will continue to breach their fiduciary duties owed to plaintiff and the members of the Class; will not engage in arm's-length negotiations on the Proposed Transaction terms; and may consummate the Proposed Transaction, all to the irreparable harm of the members of the Class.

45.   Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION

**On Behalf of Plaintiff and the Class Against
The Private Equity Defendants for Aiding and Abetting the
Individual Defendants Breach of Fiduciary Duty**

46.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein

47.   The Private Equity Defendants have aided and abetted the Individual Defendants' wrongdoing alleged herein. The Private Equity Defendants are also active and necessary participants in the Individual Defendants plan to complete the Proposed Transaction on terms that are unfair to Harrah's shareholders, as the Private Equity Defendants seek to pay as little as possible to Harrah's shareholders.

48.   Plaintiff has no adequate remedy at law.

11

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Harrah's, demands judgment as follows:

A.     Declaring this action to be a proper class action and certifying plaintiff as class representative and plaintiff's counsel as class counsel;

B.     Preliminarily and permanently enjoining defendants from disenfranchising the Class and effectuating the Proposed Transaction;

C.     Declaring that the Individual Defendants have breached their fiduciary duty to plaintiff and the Class;

D.     Declaring the Proposed Transaction void and ordering rescission if consummated;

E.     Requiring defendants to account for all shares, money and other value improperly received from Harrah's;

F.     Requiring disgorgement and imposing a constructive trust on all property and profits defendants received as a result of their wrongful conduct;

G.     Awarding damages, including rescissory damages, in favor of plaintiff and the Class against all defendants, jointly and severally, together with interest thereon;

H.     Awarding fees, expenses and costs to plaintiff and plaintiff's counsel; and

I.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  October 2, 2006

ALBRIGHT, STODDARD, WARNICK & PALMER

By:_____
G. Mark Albright
Quail Park I, Suite D-4
801 South Rancho Drive
Las Vegas, NV 89106
Tel: 702-384-7111
Fax: 702-384-0605

Attorneys for Plaintiff

12

1  Of Counsel:

2  FARUQI & FARUQI, LLP
   Nadeem Faruqi
3  Shane T. Rowley
   Antonio Vozzolo
4  320 East 39th Street
   New York, New York 10016
5  Tel: 212-983-9330
   Fax: 212-983-9331
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORIGINAL

FILED

Oct 3  8 34 AM '06

*Shirley B. Parraguirre*
CLERK

**IAFD**
G. MARL ALBRIGHT, ESQ.
Nevada Bar No. 001394
**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
801 South Rancho Dr., Suite D-4
Las Vegas, NV  89106
(702) 384-7111
Attorneys for Plaintiffs

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| NATALIE GORDON, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> HARRAH'S ENTERTAINMENT, INC., CHARLES L. ATWOOD, R. BRAD MARTIN, GARY G. MICHAEL, STEPHEN F. BOLLENBACH, RALPH HORN, GARY W. LOVEMAN, BOAKE A. SELLS, BARBARA T. ALEXANDER, FRANK J. BIONDI, JR., ROBERT G. MILLER, JR., ROBERT G. MILLER, CHRISTOPHER J. WILLIAMS, APOLLO MANAGEMENT L.P., AND TEXAS PACIFIC GROUP, <br><br> Defendants. | CASE NO.  A529183 <br> DEPT NO.  I <br><br><br> **INITIAL APPEARANCE FEE DISCLOSURE FORM** |

Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for parties appearing in the above entitled action as indicated below:

NATALIE GORDON, And All Others          $148.00
Similarly Situated

TOTAL REMITTED:                                      $148.00

DATED this ___ day of October, 2006.

ALBRIGHT, STODDARD, WARNICK & PALMER


_____
G. MARL ALBRIGHT, ESQ.
Nevada Bar No. 001394
801 South Rancho Dr., Suite D-4
Las Vegas, NV  89106
(702) 384-7111
Attorneys for Plaintiffs

G:\Cindi\Gordon, Natalie v. Harrah's\IAFD.wpd

LAW OFFICES
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 SOUTH RANCHO DRIVE
LAS VEGAS, NEVADA 89106

RECEIVED
OCT 0 3 2006
COUNTY CLERK